BESS PRAY CASTELLINE, Appellant, v. F. MARION PRAY et al., Appellees.

**BILLS AND NOTES: Validity—Mutual Mistake as to Maker's Financial Worth.** The plea, in an action on a promissory note given by a husband to his wife as part of a separation agreement, to the effect that, when the note was executed, the husband and wife were mutually mistaken as to the husband's financial condition, is not established by evidence that a *subsequent* depreciation in the value of property left the husband insolvent. Whether such plea, if proved, is permissible, *quaere.*

**HUSBAND AND WIFE: Contracts—Division of Property Pending Divorce.** An agreement for a division of property between husband and wife pending contemplated divorce proceedings is enforcible. (See Book of Anno., Vol. 1, Sec. 10447, Anno. 28.)

**BILLS AND NOTES: Consideration—Sureties.** One who signs a promissory note as surety, and also a renewal thereof, in order to secure a dismissal of an action on a prior note for the same debt, and in order to increase the security of the note, may not plead want of consideration for his signing.

Headnote 1: 8 C. J. p. 1053.  Headnote 2: 13 C. J. p. 465.  Headnote 3: 32 Cyc. pp. 55 (Anno.) 56.

*Appeal from Wayne District Court.*—H. H. CARTER, Judge.

OCTOBER 20, 1925.

ACTION on a promissory note in the amount of $3,000. Defense of want of consideration and mistake. The jury was waived, and the court entered judgment against F. Marion Pray, and dismissed the petition as to other defendants. Plaintiff appeals.—*Reversed.*

*H. F. Garrett* and *McGinnis & McGinnis,* for appellant.

*Guy A. Miller, Steele & Miles,* and *Bracewell, Murrow & Poston,* for appellees.

ALBERT, J.—I. The plaintiff and defendant F. Marion Pray were married in 1907, and divorced on the 4th of November, 1911. As a result of this marriage, one child was born. Prior to the divorce proceedings, but in anticipation thereof, the plaintiff and her husband had a conference as to alimony and the division of the property. The result of this conference was a written stipulation providing that the defendant was to pay plaintiff $85 per month for the support of the child until such child reached the age of 18 years, and was to pay the wife $5,000 on March 1, 1920. Upon the entry of the decree, the husband made to the wife a note for $5,000, due March 1, 1920. The decree provided nothing as to the note, but simply recited that there was to be $85 a month paid for the support of the child. When the note matured, the ex-husband was unable to pay the same, and a renewal note was made therefor, which was signed by F. Marion Pray and L. A. Pray, his brother. This note was not paid in September, 1921, and suit was brought thereon by the plaintiff against the signers. This case was compromised or settled by the payment of $500 and interest, the same being paid by L. A. Pray, and by a renewal of the remainder in three notes: one for $500 and two others for $1,000 and $3,000 respectively. The plaintiff insisted on security, and these notes were also signed by L. A. Pray and Hattie C. Pray. The $500 and $1,000 notes were paid by L. A. Pray, but the $3,000 note was not paid, and the present action was brought thereon.

It is to be noted that, in the making of the last three notes above specified, aside from the extension of time, the interest therein provided was increased from 6 to 7 per cent.

In answer to plaintiff's petition herein, F. Marion Pray filed a separate answer, in which he pleads, in substance, that the original notes were given without consideration, and that the settlement which gave rise to that note was made under a mistake of fact, in that he and his wife thought, at that time, that his financial worth was somewhere between $20,000 and $40,000; but that in truth and in fact he has since discovered that he was insolvent at the very time of the making of said settlement.

L. A. and Hattie C. Pray filed separate answers, in which, in a general way, they denied indebtedness, and alleged want of consideration, and further alleged that L. A. Pray made the second note, of which this was a renewal, under a mistake as to his financial situation; and they make the answer of F. Marion Pray a part of their answer. Under these issues the jury was waived, and the case was tried to the court, which found judgment in favor of the plaintiff against the defendant F. Marion Pray for the amount due on the note, but dismissed plaintiff's petition against L. A. and Hattie C. Pray.

We labor under some disadvantage in passing on this case, due to the fact that we have not been favored with any brief and argument on the part of the appellees, and the case is argued on behalf of the appellant by an attorney who took no part in the trial. There is no finding by the trial judge, and the judgment entry gives very little light on the grounds that moved the judge to enter the judgment he did. The judgment entry does find that, as against F. Marion Pray, there was a consideration for the note. As to the grounds on which the plaintiff's petition against L. A. and Hattie C. Pray was dismissed, we are left to speculate. It is apparent from the pleadings that, at most, there could be but two questions considered thereunder: first, want of consideration; and second, the claim of mutual mistake between plaintiff and her then husband as to his financial condition at the time their settlement was made. We will give attention to the latter proposition first.

F. Marion Pray, in testifying in the case, says that, at the time this settlement was made, he had an interest in the Hughes,

Dorman, and Bracewell farms, and an interest in a partnership engaged in handling and raising fancy stock, aside from his household furniture and automobile. He said that at that time he was of the opinion that his interest in the Bracewell farm alone was worth between $15,000 and $20,000. It is fairly deducible from the record that he was engaged in speculation by way of buying and selling farms. The evidence shows that he, like many others, was overtaken by the deflation and depression that shortly followed the time of making of this settlement with his wife, and that he was unable to realize from his transactions; and at the time of this trial he was probably bankrupt.

In 1922, he made application to the district court to modify the judgment and reduce the alimony allowed therein, on the ground that he had then practically become insolvent; and the court reduced the alimony allowance in favor of the child from $85 to $15 per month.

The sum total of this claimed defense is that, at the time the settlement was made with the plaintiff, defendant believed that he was worth somewhere between $20,000 and $40,000, and that he subsequently discovered that, as a matter of fact, he was insolvent at the time the settlement was made. If this is a permissible defense,—a question which we do not pass upon,—the evidence in the case given by the defendant F. Marion Pray and his witnesses does not in any way tend to support it. Taking his own language, he owned equities in these various farms, which seem to have disappeared by reason of a deflation of the boom. This is the most that can be said for his testimony, and it in no way tends to show that his original estimate of his worth was not approximately correct at the time of the settlement with his wife. We therefore hold against the appellees on this contention, they having pleaded this as a part of their defense against this note.

1. BILLS AND NOTES: validity: mutual mistake as to maker's financial worth.

II. We have ever recognized the right of a husband and wife, in anticipation of separation, to make contracts for the division of their property, and these contracts have always been

2. Husband and
Wife: contracts:
division of prop-
erty pending
divorce.

enforced by the courts.  See *Martin v. Martin,* 65 Iowa 255, and cases therein cited.  It must follow, therefore, that the note given by F. Marion Pray to his wife, in the first instance, was a valid and binding note, and therefore had a valid consideration.  As heretofore stated, it was renewed, and the second note was signed by L. A. Pray as surety.  When that note ma-

3. Bills and
Notes: con-
sideration:
sureties.

tured, and was not paid, suit was brought thereon; the matter was adjusted, as hereinbefore explained; and the note in suit herein was then made, signed by F. Marion Pray and L. A. Pray and Hattie C. Pray.  Hattie C. Pray signed the same because the plaintiff herein insisted on security, and the lawsuit was thus settled and dismissed.  Under this situation, how can it be said, as to L. A. and Hattie C. Pray, that there was no consideration for the note?

It is pleaded that L. A. and Hattie C. Pray were sureties on the note,—at least they were lending their names to F. Marion Pray,—and the fact that no consideration passed to them for such signature is not available to them as a defense.  More than this, L. A. Pray was a signer of the previous note, of which this note was a renewal.  This proposition seems to be settled in the Code of 1924, Section 9489, and in *Klemm v. Weil,* 194 Iowa 1073.  We therefore are unable to find any defense, under the pleadings and evidence in this case, for L. A. and Hattie C. Pray, and we are unable to determine why judgment was not entered against them on the note.—*Reversed.*

Faville, C. J., and Evans and Morling, JJ., concur.